Daniel L. Barton, Esq., (SBN: 135806)

**Nolan, Armstrong & Barton, LLP**

600 University Ave. \ Palo Alto, Ca. 94301
Tel. (650) 326-2980  Fax (650) 326-9704

Attorney for Defendant
Roger B. Ly

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>ROGER B. LY,<br><br>            Defendant. | Case No. CR 07-00773-1 JW<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date:  August 25, 2008<br>Time:  1:30 p.m.<br>Judge:  The Hon. James Ware |

Defendant Roger Ly, by and through his attorney Daniel L. Barton, hereby submits Defendant's Sentencing Memorandum in the above-entitled case.

The Pre-Sentence Report has calculated a total adjusted offense level of 22 and a Criminal History Category of I, thereby yielding a guideline sentencing range of 41 to 51 months. For the reasons set forth below, defendant submits that a sentence of no longer than 24 months is sufficient to reflect the seriousness of the offense, to provide a just punishment for the offense, and to protect the public.

Defendant respectfully requests that the court grant defendant a downward departure based on aberrant behavior. Sentencing Guidelines § 5K2.20. The instant offense represents a marked deviation by defendant from an otherwise law-abiding life. Neither the nature of the offense nor the defendant's personal history renders him

- 1 -
SENTENCING MEMORANDUM

ineligible for a downward departure under the aberrant behavior section of the sentencing guidelines.

Defendant further requests that the court impose a sentence below the guideline range based on the factors set forth in section 3553(a) regarding, (1) the defendant's history of lawful, productive and industrious behavior, (2) the unusual and extreme financial and emotional circumstances that contributed to defendant's commission of the offense, (3) the defendant's sincere remorse for his behavior, and (4) the defendant's efforts to cooperate with law enforcement.

The request for a sentence below that recommended in the Pre-Sentence Report is based on the Pre-Sentence Report, the materials attached thereto including the defendant's personal statement, the report of forensic psychiatrist John M. Greene, M.D., and the numerous letters of support submitted on defendant's behalf, and on such other argument and evidence as may be presented at the sentencing hearing in this matter.

Defendant also submits two additional letters of support for the consideration of the court. Exhibit A is the letter from Mr. Ly's ex-wife Tina Hwang. Exhibit B is a letter from Mr. Ly's Uncle Harold Kraemer.

A.    DEFENDANT'S BACKGROUND.

Defendant Roger Ly was born and raised in San Jose, California. Both of his parents had emigrated from Vietnam as adults in search of higher education and a better life. Roger Ly graduated from Lynbrook High School in 1994 with a GPA above 4.0. He attended U.C. Berkeley from 1994 to 1998 and graduated in 1998 with a degree in electrical engineering and computer science.

In July 1998, almost immediately following his graduation from college, Mr. Ly began working for Homestead Technologies in Menlo Park. He was held in high esteem by his colleagues for his dedication to the company, for the quality of his work, for his strong work ethic, and for his honesty and integrity.

Mr. Ly met his future wife Tina Hwang in 2000 when she was hired to work in the development department at Homestead. Ms. Hwang left Homestead in 2002 to attend

law school, first at UCLA and later at Hastings. The couple married in August 2005.

Mr. Ly maintained his position at Homestead for approximately 10 years, resigning pursuant to an agreement with his employer immediately prior to his entry of a guilty plea in this matter. Mr. Ly rose to the title of Director of Software and Development.

Even after pleading guilty to the charged offense, he has continued to enjoy the support of his employer, Homestead founder and president Justin Kitch, and his colleague Homestead co-founder and chief technology officer Thai Bui. In his letter to the court, Justin Kitch wrote, "Roger has done nothing over the past ten years at Homestead except prove himself over and over again as a dedicated worker, leader and colleague." Mr. Bui wrote, "I have known Roger Ly for over nine years now, both professionally and personally, and before this episode, I had never seen reason to doubt his honesty and integrity."

After resigning from his employment of ten years, Mr. Ly promptly obtained a contract position in his profession. He also was accepted into the Masters of Computer Science program at San Jose State University, where he began his studies taking their courses this summer.

At the time of the arrest, the defendant was 30 years old. He has no juvenile criminal record. His only prior arrest or conviction occurred in 1998 when defendant was 21 years old and was convicted of an infraction petty theft offense. Prior to his arrest in this case, Mr. Ly had never before been incarcerated.

There is nothing in defendant's past that suggests that defendant has a significant history of engaging in theft or dishonest behavior. Forensic psychiatrist Dr. John M. Greene provided psychotherapy to Mr. Ly as his treating psychiatrist and also prepared a forensic psychiatric evaluation. Dr. Greene's report is based on his numerous psychotherapy sessions with Mr. Ly, his review of law enforcement reports and the results of various validated tests to assess psychopathy and risk of violence. Dr. Greene opined in the report submitted to the probation officer that "Mr. Ly presents a low risk of repeating future criminal behavior" and "a low risk of repeating violent behavior in the

future." (The full report from Dr. Greene is attached to the Presentence Report.)

### B. CIRCUMSTANCES OF THE OFFENSE.

The crime occurred during a period of extreme emotional distress. As explained in great detail in the defendant's personal statement, in 2007 Mr. Ly became desperate and irrational due to extreme financial pressures. He had never previously experienced any similar crisis.

In 2005, Mr. Ly was the defendant in a civil action. Defendant's wife was aware of the lawsuit and of the money Mr. Ly had spent on attorney's fees. Mr. Ly, however, concealed from his wife that he resolved the suit by paying paid a $125,000.00 settlement, which he paid for by taking a loan against the condominium he had purchased as his sole property prior to the marriage. Mr. Ly led his wife to believe that he had not spent that money and that the equity in the condominium was available to help fund the purchase of a home for the couple. When Mr. Ly and his wife eventually purchased a home in 2007, the lie became more problematic. Mr. Ly sought to conceal his debt and the lack of equity in the condominium by taking another loan against his property. This loan, however, was not a typical commercial loan. Defendant sought money from a private party, a predatory lender who provided Mr. Ly with $340,000.00 at a 120% annual interest rate. The principal and interest, a sum of $442,000.00, were due and payable in full in 90 days or upon the sale of Mr. Ly's condominium, whichever came first.

Mr. Ly did not have and could not get the money that he was required to pay the private lender at closing. He had no solution. In the weeks before the closing of the sale of his condominium, Mr. Ly contemplated suicide but made no actual suicide attempts. He concocted but did not attempt other desperate plans to get money. Mr. Ly feared the consequences of not being able to pay the private lender at the time of closing. He sought money from his parents but they were unable to assist him.

Mr. Ly was unable to tell his wife the extent of his financial predicament. He felt trapped by his previous lies and did not want to disappoint his wife or lose her trust. Dr.

Greene explains that the "instant offense is related to defendant's inability to communicate honestly with his [now estranged] wife, Tina, and that this caused significant impairment and maladaptive behavior in him."

It was in this state of mind that Mr. Ly committed the instant offense. Defendant committed the offense on July 6, 2007—the very day that the sale of his condominium was scheduled to close.

Mr. Ly's scheme of calling the bank and demanding the money was a naïve and desperate attempt to escape a personal and financial crisis of his own making. The robbery had little possibility of success and the money demanded would not have been sufficient to solve the problem.

Up to the date of the offense, Mr. Ly had demonstrated a lifetime of hard work, academic success, unflagging dedication to his employer, and a willingness to work hard and contribute to this friends, colleagues and community. It is clear that at the time of the offense Mr. Ly was not functioning in the rational and intelligent manner that has characterized his behavior throughout his life.

### C. DEFENDANT DESERVES A DOWNWARD DEPARTURE FOR ABBERANT BEHAVIOR UNDER ADVISORY GUIDELINES SECTION 5K2.20.

This is precisely the type of situation contemplated by the aberrant behavior provision of the guidelines. Mr. Ly satisfies all the criteria for a downward departure under § 5K2.20. The offense was committed without significant planning, was a single event of limited duration, and represents a marked deviation from an otherwise law-abiding life. Neither the nature of the offense nor the defendant's criminal history—a single infraction petty theft conviction from 1998—render him ineligible for this downward departure.

**D.   A BELOW GUIDELINES SENTENCE IS APPROPRIATE UNDER THE CRITERIA SET FORTH IN 18 U.S.C. 3553(a)**

**1.   The History And Characteristics of The Defendant and The Circumstances of The Offense Indicate that a Below Guideline Sentence Will Be Sufficient to Accomplish the Objectives Set Forth in Section 3553(a).**

For the reasons set forth above, this court should impose a below guidelines sentence based on the sentencing factors set forth in section 3553(a).

The defendant's history of steady, honest work and his impressive accomplishments in his profession demonstrate a high likelihood that after his incarceration, Mr. Ly can return to being a productive and positive presence in his community. The support he enjoys from his former employer, his ex-wife and his family shows a large and intact support network that can help Mr. Ly get back on his feet when he gets out of prison.

Once Mr. Ly's deception of his wife regarding his finances was exposed, Mr. Ly experienced incredible relief. With the passage of time and the help of psychotherapy, Mr. Ly has gained unusual insight into the character flaws that contributed to his decision to commit this offense. This insight is fully documented in defendant's personal statement and is corroborated by those who know him best in their letters of support. Mr. Ly has expressed remorse for this action, not only for the crime the committed, but also for the deception and lies to his wife and family.

Mr. Ly has already suffered serious adverse life consequences as a result of his criminal conduct in this case. He has been forced to resign from the well-compensated position of responsibility that he held at Homestead Technologies for ten years. His marriage has disintegrated. He has been thoroughly humiliated before his family, friends and colleagues. The circumstances of the offense, reviewed together with the defendant's personal history, suggest that even a short term of imprisonment will impress upon Mr. Ly the gravity of his actions.

Mr. Ly has learned his lesson many times over. A sentence of longer than 24

months is not necessary to protect the public or afford an adequate deterrent. Considering defendant's lifetime of hard work and achievement, such a sentence is a sufficient and just punishment for the offense.

### 2. Mr. Ly's Efforts to Cooperate with Law Enforcement Regarding Predatory Lending Should be Considered by the Court under Section 3553(a).

This case was originally prosecuted by former AUSA Carlos Singh. During the course of proceedings, Mr. Singh and defense counsel engaged in several informal settlement discussions which contemplated the possibility of Mr. Ly's cooperating with law enforcement regarding the predatory loan he was trying to pay off at the time of the offense. Because the loan did not appear to violate federal laws, Mr. Singh agreed to consider cooperation with state authorities as an appropriate basis for recommending a downward departure under Sentencing Guideline § 5K1.1.

Pursuant to those discussions, defense counsel contacted Santa Clara County Deputy District Attorney Scott Tsui in the Financial Crimes Unit of the District Attorney's Office to discuss the details of the loan that Mr. Ly received. Defense counsel met with Mr. Tsui and provided extensive documentation regarding the details of the loan, the 30% interest over a three month period, effectively a 120% annual interest rate. The records show that the lender, Glyn Harding, filed a lien against the property for $391,000.00, representing the $340,000.00 principal plus 15% interest. The lender filed a separate lien under the name "Exclusive Residential Group" for $51,000.00, representing an additional 15% interest. The apparent purpose of filing two separate liens under two different names was to conceal the usurious interest rate.

Defense counsel and Mr. Tsui discussed the state law and state constitutional prohibition on usurious lending. Defense counsel provided records showing that the lender had a practice of offering private loans secured by real estate. Defense counsel also indicated that Mr. Ly was available as a witness and was willing to cooperate with the District Attorney's Office or any other law enforcement agency in an investigation of

the predatory lending practices.

After further discussions and exchanges of information, Mr. Tsui indicated that the District Attorney's Office did not wish to pursue the investigation of the predatory lending practices because the loan to Mr. Ly arguably fell under an exception to the state prohibition on usurious lending which permits high interest loans if they are "arranged by a licensed real estate broker."

All of Mr. Ly's interactions with the lenders were with a man named Joseph De La Cruz. Neither Mr. De La Cruz nor the actual lender, Glyn Harding, is a licensed real estate agent or broker. Nonetheless, it was Mr. Tsui's position that because Mr. De La Cruz was working in conjunction with Exclusive Residential Group, which is a licensed real estate brokerage, it was not a criminal investigation that the Santa Clara County District Attorney's Office wished to pursue.

At all times, the defendant was willing and eager to cooperate with law enforcement in investigation of the predatory lending practices to which he fell victim. The efforts to cooperate with law enforcement are relevant to the history and characteristics of the defendant. It is a factor which is appropriate to consider under § 3553(a).

## CONCLUSION

For the foregoing reasons, defendant Roger Ly respectfully requests that this court grant a downward departure based on aberrant behavior under Sentencing Guidelines § 5K2.20. Defendant also requests that this court carefully weigh the factors set forth in 18 U.S.C. 3553(a) and on that basis impose a sentence of no longer than 24 months of imprisonment.

Respectfully submitted,

NOLAN, ARMSTRONG & BARTON LLP

Dated: August 18, 2008

Daniel L. Barton

Dear Judge Ware,

Thank you for taking the time to read this letter. I am Roger's ex-wife, and I have known him for about seven years.

I met Roger when we both worked at the same software company. Roger was a responsible and loyal co-worker who worked late hours to meet deadlines, and who helped out his fellow co-workers. All the new employees quickly learned that Roger was the go-to guy for questions because he was always willing to take the time to listen and to help. As I got to know him better and observed how he treated his friends and family, I became even more impressed with his character. He was the type of guy who helped his friends move on the weekends, who planned his grandmother's birthday slideshow, and who looked after his younger cousins. Early on when we were dating, Roger took time off of work to care for me when I injured my back. My injury forced me to be on bed rest for about a week. During that week, Roger cooked for me, shopped for me, and took care of every need I had.

As you can imagine, no one was more shocked, disappointed, and saddened than I was to find out that Roger had committed a crime. However, I write this letter out of faith, because fundamentally I still have faith in Roger as a person. I do not believe that this crime is who Roger is. There have been too many instances in the past where he has demonstrated his responsibility, his decency, and his care for others.

I know that Roger feels very badly about what he has done. He has expressed many times that although he is scared about what will happen to him, he is most upset about the hurt and pain he has caused in other people's lives. Roger has also repeatedly expressed how sorry he feels about his actions. I think that Roger has struggled and continues to punish himself for what he has done.

I do not believe that Roger will ever do anything like this again. Although I felt that I could no longer continue to be his wife, I remain his friend, and a believer in the kind, caring, and decent person I know him to be.

Sincerely,

Tina Hwang

EXHIBIT A

1702 Meridian Avenue L237
San Jose CA 95125

August 7, 2008

Judge Ware:

I am writing a letter in support of Roger Ly. Roger now finds himself in a terrible predicament of his own making. I understand that the court has to decide how to best serve the interests of justice and rehabilitation. Based upon what I know of Roger and this situation, I ask the court to be lenient and creative in his sentencing.

As Roger's uncle, I have known him all of his life (I even babysat him when he was a toddler). Because he is only 11 years younger than me and has taken a similar life path, I feel that I have a unique insight into him. He grew up in the South Bay and did very well in school, studied electronic engineering, and then began a successful high technology career. I also grew up in the area, did very well at Bellarmine and Cal Poly, and then worked with Andersen Consulting, StrataCom, and Cisco Systems. Later, I launched a successful training and consulting firm, Sequoia Networks, which provided high technology consulting and training services around the world. Today, I am successful as a private investor, and plan to launch additional businesses in the future. Through my careers in high technology and finance, I have met, worked with, and managed a lot of successful people. Rarely have I known individuals that both have good character and are highly talented. Roger is one of these people.

His talent is self evident from his school and career success. I can provide insight into his moral fiber. Roger's hard work, school success, and generous personality have always been a role model for the other children in the extended family. In addition to doing well in his own endeavors, he took it upon himself to help entertain and care for the younger cousins. When my leg was severely injured in a rafting accident, Roger helped me during my recovery. When his grandmother was suffering from Parkinson's, he would run errands for her. In short, whenever someone needed some help, Roger could be depended upon.

Perhaps his desire to always help others combined with his long history of success led him down the path that ended with in this situation. However, these bad decisions are not typical for him; rather Roger was under such great stress that he stopped being rational. Normally Roger is smart enough to know that it could not have worked; and he is ethical enough to never even consider such an action. But, at the time, I believe he had put so much pressure on himself for so long that he lost the ability to think sensibly. After being arrested and admitting his actions, I think Roger felt relief that the charade was over.

Roger has suffered for his actions. He has large financial expenses due to his actions, has suffered emotionally, and has damaged his successful career. Roger is extremely sorry that he did what he did, and has expressed that sorrow to me. He has repeatedly apologized for both what he did and the pain that he has caused for others.

Roger is working to redeem himself and I am confident that another event like this will not happen again. Roger is taking steps to rebuild his life and to make sure that

EXHIBIT B

he doesn't go down the same path as before. He is taking better care of his finances; he is rebuilding his career by working independently as a software consultant; and has started graduate studies in computer science. He is also working with a psychologist to overcome the faulty thought processes that led him, step by step, to the point of desperation where he would attempt something that was utterly irrational. He is now able to ask for help when needed and is more open and honest about his problems. He also realizes that he cannot single handedly solve everyone's problems. He further recognizes that a small lie can lead to a slightly larger one, and so on, to the point that one has painted himself into a corner.

My greatest fear is that a long prison sentence will be detrimental to his rehabilitation. Although he has done bad things, he is a good person. A prison situation, in which one is surrounded by people that are a negative influence, is a huge obstacle for anyone that is trying to improve himself. Furthermore, his computer software skills are a valuable resource for our society. The longer that he is away from an ever changing industry, the more his skills will become obsolete. He has already decided to put his prison time to the best use possible, by trying to learn, study, and read as much as he can. However, it is just not possible to stay current with technology from books alone, which are usually dated. Some type of sentence that would allow him to remain current with technology would help him to reenter the workforce. Of course, I realize that he has committed a serious crime and he must be punished for it. I hope, however, that the punishment will be one that allows him to quickly return to being a valuable member of society.

Thank you.

Sincerely,

*Harold Kra—*

Harold Kraemer